Daniel D. GARCIA, Appellant,

v.

The STATE of Texas.

No. PD–1633–04.

Court of Criminal Appeals of Texas.

June 28, 2006.

David L. Botsford, Austin, for appellant.

Scott Roberts, Asst. Crim. Dist. Atty., San Antonio, Matthew Paul, State's Attorney, Austin, for state

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

Appellant Daniel D. Garcia was convicted of murdering his wife and sentenced to ninety-nine years in prison. On appeal, Garcia argued that evidence of a prior act was improperly admitted by the trial court. The court of appeals held that the trial court committed harmful error in admitting the evidence and reversed the judgment of the trial court. *Garcia v. State*, 150 S.W.3d 598 (Tex.App.-San Antonio 2004). We will reverse.

## FACTS

The victim, Lesa Garcia, was Appellant's estranged wife. The marriage had been troubled for several years, and the couple had separated twice before the victim filed for divorce. The cause of the first separation was the "car dumping" incident, which is the prior bad act at issue in this case. The evening of the "car dumping" incident, Appellant and Lesa and their two sons had driven to Appellant's parent's home in Leon Springs. After dinner with Appellant's family, Appellant, Lesa, and their two sons were driving home when Appellant and Lesa began to argue about Appellant's desire for them to build a house on his parent's land and move from their home in San Antonio onto the "family compound." During the argument, Appellant pulled over on Loop 1604, unhooked Lesa's seatbelt, pushed her out of the car, and drove away, leaving her on the side of the road without her purse or cellular phone. She walked almost two miles to a grocery store and called her sister to come pick her up. Lesa reported the incident to the San Antonio Police Department the following week.

Appellant and Lesa were separated for the next two and a half months but then reconciled and began to see a marriage counselor. The counselor testified at trial that the "car dumping" incident was a frequent topic of discussion in the counseling sessions. He also testified that at one session, more than a year after the incident, Appellant admitted that he could get physical with Lesa if she nagged him. The next day, the counselor called Lesa and suggested that she file for divorce and obtain a protective order. The following week, Lesa hired an attorney and served Appellant with divorce papers, including a court order that he vacate their home. Appellant moved out of the home he and

Lesa shared and stayed with his parents until he moved into a mobile home on his family's compound. The next day, Lesa changed the locks on her home.

For the next six months, Appellant and Lesa shared custody of their sons while they were working on a divorce settlement. Several days before Lesa's murder, Appellant, his attorney, Lesa, and her attorney met to discuss the property distribution, and for the first time, Appellant indicated that he wanted custody of the boys. The next day, Lesa asked Appellant if she could have the boys for the weekend, but he refused because it was his weekend.[1] He also refused her request that he take the boys to a birthday party the next day, claiming that he planned to take them to a family wedding. Instead of attending the wedding, Appellant and his sons spent that Saturday at the family compound. The next day, Appellant's family met for their traditional Sunday dinner at his parent's house. After dinner, Appellant took his sons back to the mobile home to get them ready for bed. He stated that while walking from his parent's house to his mobile home, he slipped and fell backward, bruising his right hand. When they arrived at the mobile home, Appellant bathed his sons. He stated that when he was getting his oldest son out of the tub, the boy slipped and scratched Appellant's chest.

Appellant's sister, brother-in-law, and nephew, as well as one of his nephew's friends left the family dinner and returned to their home, also on the family compound. Appellant's nephew and two of his teenaged friends were preparing to camp on the property that night. Appellant's other sister and brother-in-law and their children watched a movie after dinner and did not leave the family compound until around 1 a.m. to return to their home, which was not on the family compound. The front gate of the compound has a "dinger" which sounds inside Appellant's parent's house to alert them when someone enters or exits the property. Appellant's parents testified that the last time they heard the dinger was at around 1 a.m. when Appellant's sister and her husband and children left to go home. They also stated that the dinger rings very loudly inside their home, so they would have known if anyone had exited or entered the property that night. One of Appellant's nephew's friends, who was camping on the property, testified that he saw the headlights of a car enter the property and park at Appellant's mobile home. He believed that it was around 3 a.m. but he was not wearing a watch. When he asked the other boys who it was, Appellant's nephew replied, "Oh, it's just my uncle."

Later that morning, Appellant took his sons to daycare and went to work. That same morning, Lesa failed to show up for work. Her friend and co-worker became concerned and went to her home to check on her. Lesa's car was in the driveway, but Lesa did not answer the doorbell. Her friend went around to the back of the house and looked in a window. She saw Lesa's purse, but did not see Lesa. She also noticed that the exterior house lights and the soaker hose were still on.[2] She then called their employer and suggested that someone call Lesa's stepfather. Lesa's stepfather arrived at Lesa's house

---

1. Testimony indicated that Appellant and Lesa had agreed several weeks earlier to switch weekends so that Lesa could have the boys while her brother was in town visiting, which resulted in confusion regarding whose weekend it was to have the children.

2. Lesa's next door neighbor testified that she had seen Lesa in her back yard watering her lawn at around 9 p.m. the night before.

and used his key to enter the front door,[3] setting off the alarm, which he could not disable. At that point, he found Lesa's body at the foot of the stairs, near the front door, and called 911.

The officers who arrived at the scene determined that there had been no forced entry to the home and it did not appear that anything had been stolen. The evidence technicians videotaped and photographed the scene and checked for fingerprints, hair, and DNA evidence, and bagged Lesa's hands to preserve the evidence under her fingernails. Blood was found in the upstairs master bedroom, on the stairs, and around Lesa's body at the bottom of the stairs. The medical examiner determined that she died from blunt-force head trauma and strangulation.

When detectives went to Appellant's office to inform him of his wife's death, they noticed scratch marks on his neck. They took him to the police station to gather more information about Lesa, but stopped the interview when Appellant asked for an attorney. Detectives obtained a warrant to photograph the scratches on his neck and to gather hair and blood samples for comparison to the evidence found at the crime scene. When the detectives took Appellant to the hospital to gather the evidence, they noticed that his hand was also bruised. After the photos, hair, and blood samples were taken, the detectives took Appellant back to his parent's house.

The material found underneath Lesa's fingernails was tested and determined to be consistent with Appellant's DNA.[4] A month after Lesa's death, Appellant was arrested and charged with her murder.

Prior to the trial, Appellant filed a motion in limine, stating that the car dumping incident was inadmissible under Rules of Evidence[5] 401, 403, and 404(b); that it violates the confrontation clause; and the testimony of the family members regarding the incident necessarily involves hearsay. The State responded that because Lesa called her sister crying, upset, and frightened as soon as she walked to the nearest telephone after being left on Loop 1604, the testimony of Lesa's sister regarding what Lesa told her about the incident fell under the excited utterance exception to the hearsay rule, which rebuts the confrontation-clause objection. In response to the Rule 401, 403, and 404(b) claims, the State argued that the car dumping incident was relevant to motive and intent. The trial court denied the motion in limine and allowed Lesa's sister to testify regarding the car dumping incident. A counselor with whom Lesa had met several times after the incident also mentioned it in her testimony,[6] as did the psychologist to whom Lesa and Appellant went for marriage counseling. After the marriage counselor testified, the trial judge gave the jury a limiting instruction, stating that the testimony should be used only in determining the intent or motive of the defendant, if any, in connection with

---

3. Lesa's stepfather testified that he used his key to open the button lock on the door knob, but could not remember whether the deadbolt on the door was locked.

4. At trial, Appellant argued that because he had lived in the house where Lesa was murdered, it would be normal for his DNA to be in the carpet. So, if Lesa's bloody hands were dragged across the floor when she was murdered, then some of his DNA from the carpet could have stuck under her fingernails.

The medical examiner, however, testified that there were no carpet fibers under Lesa's fingernails.

5. All subsequent references to Rules refer to Texas Rules of Evidence.

6. The judge gave the jury an instruction to disregard the counselor's testimony regarding the incident.

the offense, if any, alleged against him in the indictment in this case, and for no other purpose. The State also elicited testimony regarding the car dumping incident on cross-examination of Appellant and his mother.

The jury found Appellant guilty of murder, and he was sentenced to ninety-nine years' imprisonment.

## COURT OF APPEALS

Appellant appealed, arguing that the evidence was legally insufficient to support his conviction. The court examined the evidence in the light most favorable to the verdict and held that a rational jury could have found the elements of the offense beyond a reasonable doubt. 150 S.W.3d 598 at 606. Appellant also argued that the trial court improperly admitted evidence of the car dumping incident in violation of Texas Rules of Evidence 401, 403, and 404(b). The court first considered whether the evidence was relevant to a material issue or was being used to prove the character of Appellant in order to show that his actions at the time of the murder conformed to this character. The court determined that the car dumping incident had no purpose other than to show that Appellant acted violently in the past and acted in conformity with this violent character on the night in question. *Id.* at 612. The court of appeals held that the trial court abused its discretion in admitting the evidence and, after concluding that the error was harmful, reversed the judgment of the trial court. *Id.* at 617.

## ARGUMENTS OF THE PARTIES

The State and Appellant filed petitions for discretionary review with this Court. We refused Appellant's petition and granted the State's following seven grounds for review:

1. Did the court of appeals err by failing to properly harmonize Texas Rule of Evidence 404(b) with Texas Code of Criminal Procedure 38.36(a) as required by the Texas Court of Criminal Appeals in *Smith v. State,* 5 S.W.3d 673 (Tex.Crim.App.1999)?

2. Should the Court of Criminal Appeals overrule *Smith v. State,* 5 S.W.3d 673 (Tex.Crim.App.1999)?

3. Did the court of appeals err in holding that the evidence of an incidence of previous domestic violence perpetrated by the Appellant against the victim was introduced solely for character conformity purposes when in fact it was relevant to motive, intent, state of mind, and other purposes including the nature of the relationship between the victim and defendant pursuant to Texas Rule of Evidence 404(b)?

4. Did the court of appeals err in holding that intent was not an issue in this case in direct contravention of this Court's holding in *Robbins v. State,* 88 S.W.3d 256 (Tex.Crim.App. 2002)?

5. Did the court of appeals err by misapplying Texas Rule of Evidence 403 and concluding that the probative value of the evidence of previous domestic violence was substantially outweighed by the danger of unfair prejudice in direct contravention with this court's holding in *Robbins v. State,* 88 S.W.3d 256 (Tex.Crim. App.2002)?

6. Did the court of appeals err in misapplying the appellate abuse of discretion standard of review to reverse the trial court's decision to admit evidence solely because the appellate court disagreed with that decision in direct contravention of *Robbins v.*

*State*, 88 S.W.3d 256 (Tex.Crim.App. 2002)?

7. Did the court of appeals err in misapplying the appellate harm standard in Texas Rule of Appellate Procedure 42.2(b)?

The State argues that the court of appeals erred in holding that the trial court abused its discretion in admitting evidence of the car dumping incident. Because evidence of ill will in cases involving family members is relevant for purposes other than to show character conformity, prior acts which demonstrate ill will should be admissible. The State cites numerous cases in which the defendant repeatedly mistreated the victim and committed acts of violence shortly before the crime, which were held to be admissible to show the relationship between the defendant and the victim prior to the crime. The State also contends that relationship evidence raises an inference that the defendant had a motive to commit the offense and thus the evidence is admissible under Rule 404(b). The State disagrees with the court of appeals's limited definition of motive, under which previously manifested ill will, anger, and hostility would always be propensity evidence and thus never admissible under Rule 404(b). Citing *Rodriguez v. State*, 486 S.W.2d 355 (Tex.Crim.App. 1972), and *Foy v. State*, 593 S.W.2d 707 (Tex.Crim.App.1980), the State argues that prior acts are circumstantial evidence of the defendant's emotion and are probative when the emotion is the motive for committing the offense. In this case, the State contends that Appellant's feeling of hostility, anger, and ill will toward Lesa was the motive for the murder, and the car dumping incident is evidence of his emotions.

The State also disagrees with the court of appeals's interpretation of our holding

in *Smith v. State*, 5 S.W.3d 673 (Tex.Crim. App.1999). *Smith* held that Rule 404(b) and Article 38.36(a)[7] can be harmonized, giving effect to both. The court of appeals interpreted this to mean that relationship evidence under Article 38.36(a) is admissible only if it is probative of one of the factors listed in Rule 404(b), such as motive and intent. Because the court concluded that the car dumping evidence did not show Appellant's motive for committing the charged offense, it held that the evidence was inadmissible character evidence. The State points out that this is not harmonizing the rule and the statute and giving effect to both, rather, it is ignoring Article 38.36(a) evidence and considering only Rule 404(b) in determining that the evidence is inadmissible. Instead, the State argues that the rule and the statute should be harmonized by allowing evidence of prior acts which show the nature of the relationship between the accused and the victim, when the nature of the relationship is relevant to a material issue in the case.

Finally, the State argues that the probative value of the car dumping incident is not substantially outweighed by the danger of unfair prejudice. Because the car dumping incident showed Appellant's ill will and hostility toward his wife, the evidence was probative of Appellant's motive for the charged offense. The incident also explains other factors affecting their relationship, such as the separation and the marriage counseling. According to the State, there is little chance that the jury was impressed in an irrational way by this evidence or was distracted away from the charged offense by the testimony. And, although the incident was mentioned by several witnesses, it did not take a great deal of time to develop the evidence. Because motive was a disputed issue in this

---

7. All subsequent references to Articles refer to Texas Code of Criminal Procedure.

case, the State had a great need for this evidence to show Appellant's hostility toward Lesa, as well as to show why they separated, why they sought marriage counseling, and why they ultimately divorced. According to the State, the car dumping incident tied all of this together and refuted Appellant's claim that their divorce was amicable.

Appellant argues that the cases cited by the State are distinguishable because they involve repetitive, violent acts that are contemporaneous with and similar to the charged offense. Appellant also claims that the evidence had little probative value and the State's stress on the evidence caused unfair prejudice. Appellant agrees with the court of appeals that the car dumping incident was not probative of motive or intent, and was not relevant to any material issue in the case. In the cases cited by the State, the prior bad acts are admissible because they are probative of one of the other purposes listed in Rule 404(b) and meet the relevance and prejudice requirements of Rules 401 and 403. In this case, Appellant argues that these requirements are not met.

Appellant asserts that the State's emphasis on the car dumping incident implied that it was the cause of the murder, rather than the cause of the divorce. And, the State's repeated presentation of testimony regarding the incident was to show that Appellant was violent and therefore acted in conformity with his violent character and murdered Lesa, which is exactly what Rule 404(b) forbids. Appellant argues that the State made Appellant's state of mind an issue because the circumstantial evidence in the case was weak, consisting of the testimony of Appellant's nephew's friend that he saw a car arrive at Appellant's mobile home that night; Appellant's DNA found under Lesa's fingernails; and the scratch on Appellant's chest and bruise on his hand, for all of which the defense offered alternative explanations. Because of this, the jury was forced to consider Appellant's character in order to prove his propensity to commit the offense.

Finally, Appellant argues that there is no reason to revisit *Smith* because the court of appeals held that Rules 403 and 404(b) rendered this Article 38.36(a) relationship evidence inadmissible, properly giving effect to both the Rule and the statute.

## ANALYSIS

Article 38.36(a) states that, "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." The nature of the relationship-such as whether the victim and the accused were friends, were co-workers, were married, estranged, separated, or divorcing-is clearly admissible under this Article. However, in some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship. These specific acts of violence must meet the requirements of the Rules of Evidence in order to be admissible. Rule 404(b) deals with prior acts of violence and specifically instructs courts regarding the admissibility of such evidence. We held in *Smith* that Article 38.36(a) and Rules 403 and 404(b) can be applied congruously. 5 S.W.3d at 677. The fact that Article 38.37 lists the specific offenses for which evidence of extraneous offenses or acts are admissible without having to meet the requirements of Rule 404 indicates that other offenses, such as the murder in the case

before us, *are* subject to the requirements of Rule 404. And, although Rules 403 and 404 limit the admissibility of some Article 38.36(a) relationship evidence, this does not mean that the statute and the Rules are in conflict with each other. It simply means that the State is prohibited from presenting evidence if the probative value is substantially outweighed by unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, or needless presentation of cumulative evidence. The State is also prohibited from presenting evidence for the sole purpose of showing that the accused acted in conformity with his bad character and murdered the victim. While Rule 404(b) limits the admissibility of specific acts used to show only the defendant's character, and may keep a prosecutor from trying the case not on the charged offense but on the past acts of the accused, it certainly does not block the admission of all relationship evidence.

We generally assume that each word and phrase in a statute has meaning and should be given effect, if possible. *See Nguyen v. State,* 1 S.W.3d 694, 696 (Tex. Crim.App.1999); *Dowthitt v. State,* 931 S.W.2d 244, 258 (Tex.Crim.App.1996). While this standard of construction has traditionally been applied to the interpretation of statutes rather than court-promulgated rules,[8] it makes sense to consider the plain language of a rule as well. *See Donovan v. State,* 68 S.W.3d 633 (Tex. Crim.App.2002). *See also Robbins v. State,* 88 S.W.3d 256, 262 (Tex.Crim.App. 2002) (stating that it is important to remember that each word in a rule is significant). Rule 404(b) says that evidence of other crimes, wrongs or acts may be "admissible for other purposes, such as ..." and then lists examples of purposes for which the evidence may be admissible. Based on the clear language of the Rule, this list is not exhaustive. If it were intended for the Rule to allow an exception only for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, then it would not have included the phrase "other purposes, such as." As a result of this language, it is clear that there are additional "other purposes" for which evidence of prior acts may be admitted. For example, in cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible. In *Smith,* we noted that "evidence will be relevant to a material issue if the purpose for which the party seeks to have it submitted tends to make 'the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' What issues are material will depend on the theories of the prosecution and the defense." 5 S.W.3d at 679 n. 13. (citations omitted).

The court of appeals determined that the car dumping incident was not probative of Appellant's motive for murdering his wife and that intent was not a material issue in the case. Therefore, the court concluded that the evidence was offered for the sole purpose of showing that Appellant had a violent character and acted in conformity with that character in murdering Lesa. However, the court failed to consider that in this case, the relationship between the Appellant and the victim was itself a material issue. The car dumping incident was relevant to circumstances surrounding their relationship immediately

---

8. The legislature conferred rule-making power upon this Court to promulgate the Rules of Criminal Evidence in 1985. In 1998, this Court and the Supreme Court adopted identical Rules of Evidence.

preceding the murder, i.e., that they had separated, attempted to reconcile, and sought marriage counseling, but instead were in the process of divorcing. The court of appeals failed to consider that the circumstances surrounding the relationship at the time of the killing is relevant evidence under Article 38.36(a) and the car dumping incident is admissible under Rule 404(b) for the purpose of illustrating the nature of their relationship.

In *Robbins*, 88 S.W.3d 256, we held that because the defense made intent an issue by presenting the theory that the injuries to the victim at the time of her death were caused by efforts to resuscitate her, evidence of previous injuries the victim suffered while she was in the appellant's care was material to that issue and admissible to rebut the defense theory. However, we pointed out that a simple plea of not guilty does not put intent at issue in each case. Because Appellant in this case did not put intent at issue through means such as the presentation of defense theories or vigorous cross-examination, we disagree with the State's argument that the decision of the court of appeals on the issue of intent conflicts with our holding in *Robbins*.

■■■ We also considered in *Robbins* whether the probative value of the admitted evidence was substantially outweighed by the danger of unfair prejudice under Rule 403. As we stated earlier in the context of Rule 404(b), we assume that each word in the rule is significant and should be given effect if possible. *Id.* at 262. Thus, when determining whether evidence is admissible under Rule 403, we do not consider just whether the evidence is more prejudicial than probative, we consider whether the probative value is *substantially* outweighed by the danger of *unfair* prejudice. *Id.* The purpose in excluding relevant evidence under Rule 403 is to prevent a jury that has a reasonable doubt

of the defendant's guilt in the charged offense from convicting him anyway based solely on his criminal character or because he is generally a bad person. *Id.* at 263. We held in *Robbins* that there was no reason to believe that the jury had reasonable doubt on the charged offense but convicted the appellant based on the prior bad act evidence. Similarly, in this case, there is no reason for us to believe that the jury had reasonable doubt that Appellant murdered Lesa but convicted him anyway based on the evidence of the car dumping incident. As we stated, the evidence was probative of the relationship between Appellant and Lesa, and was necessary to tie together the events beginning with their first separation, including the subject matter of their counseling sessions, which ultimately explained why Lesa filed for divorce. Finally, any potential prejudice was diminished by the trial court's limiting instruction and instruction to disregard. Because the court of appeals improperly disregarded the probative value of the car dumping evidence, its Rule 403 balancing test was inevitably skewed. Therefore, the court of appeals erred in holding that the probative value of the car dumping incident was substantially outweighed by the danger of unfair prejudice.

■■ An appellate court is not free to reverse a lower court's decision simply because it disagrees with that decision. While the court of appeals may have disagreed with the trial court's determination that the car dumping evidence was admissible, the court of appeals should not have reversed the trial court unless the decision of the trial court was outside the zone of reasonable disagreement. Because the car dumping incident was admissible under Rule 404(b) for the purpose of explaining the circumstances surrounding the divorce, which was relevant to the nature of their relationship at the time of the offense, the

trial court's decision to admit the evidence under Article 38.36(a) was not outside the zone of reasonable disagreement. The court of appeals misapplied the appellate harm standard of review by reversing the decision of the trial court simply because it disagreed with that decision.

## CONCLUSION

The court of appeals erred in holding that the car dumping incident was introduced solely for character conformity purposes and in failing to consider that the evidence had probative value to explain the nature of the relationship between Appellant and Lesa at the time of the offense. Additionally, as a result of disregarding this evidence, the court of appeals' Rule 403 analysis was flawed.

Because we conclude that the trial court did not commit error, there is no need for us to consider the court of appeals' application of the appellate harm standard. The decision of the court of appeals is reversed, and the cause is remanded for consideration of the remaining issues.

JOHNSON, J., concurred.

PRICE, J., filed a dissenting opinion.

WOMACK, J., did not participate.

PRICE, J., dissenting.

I disagree that the court of appeals in this cause ignored a viable theory of admissibility under Rule 404(b), or that its balancing analysis under Rule 403 was flawed.[1] Because I cannot find fault with the court of appeals's conclusion that the error in admitting the so-called "car dumping" incident was harmful, I would affirm its judgment.

### Rule 404(b)

The court of appeals held that the "car dumping" incident was not admissible either to prove motive or intent; nor was it admissible to rebut a defensive theory.[2] The majority today does not take issue with any of these holdings, essentially acknowledging that the "car dumping" incident logically served none of the non-character-conformity purposes adduced by the State.[3] Nor does the majority accept the State's invitation to overrule our opinion in *Smith v. State*.[4] Indeed, the majority reconfirms the core holding of *Smith*, viz: that to be admissible under Article 38.36(a) of the Code of Criminal Procedure,[5] evidence must be relevant to some non-character-conformity purpose. That is to say, it must tend to make the existence of a fact of consequence to the determination of the action more probable or less probable than it would be without that evidence, and it must do so employing a logical inference other than character conformity.[6] In its opinion below, the court of appeals adhered to *Smith* scrupulously.[7]

Nevertheless, the majority faults the court of appeals insofar as it "failed to consider that in this case, the relationship

1. TEX.R. EVID. 404(b), 403.

2. *Garcia v. State*, 150 S.W.3d 598, at 611–615 (Tex.App.-San Antonio 2004).

3. Op. at 703, 704. The court of appeals found that the "car dumping" incident was essentially too remote in time from the offense to supply evidence of motive, and that the intent of whoever murdered the victim was self-evident. *See Garcia v. State*, supra, at 612 & 613, respectively. Nor did it serve logically to

rebut a defensive issue. *Id.*, at 703. The majority today does not dispute any of these conclusions.

4. 5 S.W.3d 673 (Tex.Crim.App.1999).

5. TEX.CODE CRIM. PROC. art. 38.36(a).

6. *Smith v. State*, supra, at 679 & n. 13.

7. *Garcia v. State*, supra, at 611, 613.

between the Appellant and the victim was itself a material issue."[8] The only elaboration on this criticism comes a few sentences later, when the majority observes: "The court of appeals failed to consider that the circumstances surrounding the relationship at the time of the killing is relevant evidence under Article 38.36(a) and the car dumping incident is admissible under Rule 404(b) for the purpose of illustrating the nature of their relationship."[9] But the majority does not explain how "illustrating the nature of their relationship" in the context of this case advances the evidentiary ball in any way that does not exclusively involve impermissible inferences of character conformity.

Given how faithfully the court of appeals adhered to our *Smith* opinion, it is not at all surprising that it failed to come up with nature-of-the-relationship as an operative theory of admissibility under Rule 404(b). Nor did the State make this argument in its appellate briefs. We were quite explicit in *Smith* that, before evidence of "the previous relationship existing between the accused and the deceased" may be introduced, the proponent of that evidence must be able to identify some non-character-conformity purpose. It is true that the purpose does not have to be listed in Rule 404(b), since the rule itself is "illustrative," and not exhaustive.[10] But the evidence must logically serve to make more probable or less probable an elemental fact; make more probable or less probable an evidentiary fact leading *inferentially* to an elemental fact; or make more probable or less probable defensive evidence that *undermines* an elemental fact.[11] It goes

without saying that the nature of the relationship is not, in itself, an "elemental fact." The majority today does not tell us how nature of the relationship may constitute an evidentiary fact that inferentially establishes or undermines an elemental fact. Nor has the State suggested any way that it does.

Later, albeit in the context of its discussion of Rule 403, the majority provides further insight when it explains that "the evidence was probative of the relationship between Appellant and [his wife], and was necessary to tie together the events beginning with their first separation, including the subject matter of their counseling sessions, which ultimately explained why [his wife] filed for divorce."[12] It is not self-evident how any of this makes more or less probable any fact of consequence to the determination whether the appellant murdered his wife, other than to show general animus or ill will toward her. But, once again relying appropriately upon our opinion in *Smith*, the court of appeals responded to the State's contention that the "car dumping" incident was admissible to show ill will and anger, thus:

> An extraneous offense that merely shows general ill will cannot alone be sufficient. Otherwise, the court of criminal appeals would not have held that evidence under article 38.36 must still pass rule 404(b) muster. *See Smith*, 5 S.W.3d at 679. Here, the "car dumping" incident shows general ill will on one occasion. It simply is not probative of [the appellant's] motive to murder [his

8. Op. at 703.

9. *Id.,* at 704.

10. *Montgomery v. State,* 810 S.W.2d 372, at 387 (Tex.Crim.App.1991) (Opinion on rehearing on Court's own motion).

11. *Id. See Smith v. State,* supra, at 679, n. 13; Tex.R. Evid. 401.

12. Op. at 704.

wife] two years later.[13]

All that the majority has done today is to re-cast the State's "ill will" theory of admissibility, which the court of appeals expressly rejected, as nature of the relationship evidence, and declare that the court of appeals ignored it. But the court of appeals did not ignore it. It simply found it too remote to be probative. I see no reason to disagree.

## Rule 403

But even assuming that the majority is correct today to claim that nature-of-the-relationship evidence is somehow a legitimate purpose, apart from "ill will," under Rule 404(b), it does not adequately refute the court of appeals's conclusion that evidence of the "car dumping" incident was substantially more prejudicial than probative. The majority declares that the court of appeals's analysis was "inevitably skewed" by its failure to recognize the probative value of the evidence.[14] To the extent that the majority's nature of the relationship theory of admissibility is really just a reformulation of the State's ill will theory, it is not accurate to say the court of appeals failed to recognize it. In fact, the court of appeals recognized it, and rightly rejected it.

But again, even entertaining the assumption that the majority's nature of the relationship theory has some legitimate, non-character-conformity purpose under Rule 404(b), the evidence was still substantially more prejudicial than probative. As the court of appeals noted when it assumed (as I do, *arguendo*, and only for purposes of the Rule 403 analysis) that the "car dumping" incident had legitimacy as "motive" evidence, there was plenty of other evidence to show the appellant's anger and ill will toward his wife.[15] The State had no need to disclose the "car dumping" incident. That the appellant and his wife were in marriage counseling, that the counseling was not helping, and that his wife had filed for divorce, precipitating disputes about money and child custody, was all the evidence of either ill will, motive, or nature of the relationship that the State could possibly need. Adding the "car dumping" incident, even for its arguably explanatory value (if any), did not appreciably contribute to the inference that the appellant wanted (or intended, or had motive, or was angry at, and therefore resolved) to kill his wife. Aside from its character-conformity value, the "car dumping" incident did not enhance the state's nature of the relationship purpose under Rule 404(b). The State had no compelling need for it.

The majority also invokes the trial court's limiting instructions as reason to believe that "any potential prejudice was" insignificant.[16] But the trial court's instructions, both during the course of trial and in its charge to the court at the guilt phase of trial, limited the jury's consideration of extraneous misconduct only to the issues of intent and motive. The court of appeals concluded that evidence of the "car dumping" incident did not legitimately serve these purposes, and the majority does not contest that conclusion today. In fact, then, the limiting instructions only exacerbated the prejudicial impact of the evidence, for it likely led the jury to believe it could consider the evidence for impermissible character-conformity purposes in the false guise of "intent" or "motive."

13. 150 S.W.3d at 613.

14. Op. at 704.

15. 150 S.W.3d at 616–617.

16. Op. at 704.

### Rule 44.2(b)[17]

The State argues in its brief on the merits on discretionary review that the court of appeals "erred by failing to correctly apply" Rule 44.2(b). Reading on, however, it is apparent that the State does not mean by this that the court of appeals somehow misconstrued the language of the rule, or ignored this Court's precedents construing it. The State just contends that the court of appeals reached the wrong result. Were this the only ground for review in the case, in all probability we would never have granted it, since we do not ordinarily exercise our power of discretionary review to correct the courts of appeals' applications of well-settled or uncontroversial legal principles. *See Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App. 1992).[18]

The State argues that the evidence aside from the "car dumping" incident was "overwhelming," and thus, any error was harmless. But the court of appeals disagreed, finding the evidence to be circumstantial, with exculpatory explanations offered for much of the otherwise seemingly inculpatory circumstances.[19] References to the "car dumping" incident were pervasive during the trial, and it was emphasized during the State's closing argument.[20] Relying upon our opinion in *Burnett v. State*,[21] the court of appeals declared itself in "equipoise" on the question whether the error affected the appellant's substantial rights, and rightly

concluded it must reverse under these circumstances.[22] I cannot find any fault with this analysis, and thus, I would affirm the judgment of the court of appeals. Because the Court does not, I respectfully dissent.

---

17. Tex.R.App. Proc. 44.2(b).

18. Although we nominally overruled *Arcila* in *Guzman v. State*, 955 S.W.2d 85, at 90 (Tex. Crim.App.1997), we elsewhere in *Guzman* explained that *"Arcila* is better understood to state the types of considerations that inform our decisions whether to exercise our discretion to review an intermediate appellate court's decision." 955 S.W.2d at 89–90. *See King v. State*, 125 S.W.3d 517, at 520 & n. 9

(Tex.Crim.App.2003) (Cochran, J., concurring in refusal of PDR).

19. *Garcia v. State*, supra, at 616.

20. *Id.*, at 615–16.

21. 88 S.W.3d 633, at 637 (Tex.Crim.App. 2002).

22. *Garcia v. State*, supra, at 615–16.