Opinion issued May 9, 2024



In The

# Court of Appeals

For The

## First District of Texas

—————————————————

### NO. 01-23-00173-CR

—————————————————

**KENNETH B. HOWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Case No. 1638613**

---

## MEMORANDUM OPINION

A jury convicted Kenneth B. Howard of murdering Pamela Pratt,[1] and the trial court sentenced Howard to 60 years' confinement. In one issue, Howard contends the trial court abused its discretion by admitting evidence of an extraneous offense—

---

[1] *See* TEX. PENAL CODE § 19.02.

the aggravated assault of Pratt's teenage son—during the guilt phase of trial. Because we conclude the trial court did not abuse its discretion by admitting the extraneous offense, we affirm.

## Background

Pratt and her two children—a 17-year-old son and an 11-year-old daughter—moved from Dallas to Houston to live with Howard, Pratt's boyfriend. After Pratt and Howard began living together, their relationship deteriorated. In a January 2019 argument, Pratt's son saw Howard raise his hand "like he was going to hit [Pratt]." The son intervened, standing between Howard and Pratt, and called police.

On March 1, 2019, Pratt called 911 because Howard had a gun. When police responded, Pratt's son said that Howard came home "drunk," felt disrespected by the son, and fired a handgun in the son's direction. The bullet hit the air mattress the son was sleeping on, causing it to deflate. Howard then forced Pratt's son at gunpoint into the living room, where Pratt was sitting on the couch and crying. Howard asked Pratt if she loved her son. The son believed Howard's question was a threat intended to gain "some type of advantage" over Pratt. Howard was charged with aggravated assault with a deadly weapon.

Four days later, Pratt's son signed a letter of non-prosecution asking the State to drop the charges against Howard. The son claimed that he had fabricated the incident out of anger:

2

[H]oward . . . didn't do the things I said he's done[.] I was mad at him because he took my BB gun and he thought it was a real one and we had words and I called the police on him and said he had a real gun[.] [I] didn't think he was going to go to jail[.] I was trying to scare him. [I']m sorry for making a false Report and again I would like to drop the charges and lift the restraining order.

Howard lived separately for about a month. But he later apologized for the incident and moved back into the home. According to Pratt's son, Pratt and Howard's relationship was "peaceful" at first but became "rocky again." Pratt overheard Howard telling a friend that he was tired of Pratt and her son and needed to do something to them. Pratt told Howard that she planned to leave the home once she found a place to live with her children.

One month later, Howard called 911 and confessed that he had killed Pratt by stabbing her after they argued. Howard told the 911 dispatcher that Pratt threatened to leave him and start a relationship with someone else. Howard had Pratt's body in his truck, and he offered to drive home to meet police. He asked for a quick police response because he feared a confrontation with Pratt's son over Pratt's death. When police arrived, they found Pratt's body in the passenger seat of Howard's vehicle. Howard was arrested.

Howard's defensive theory at trial was mistake of person based on inconsistencies in the forensic evidence. He claimed that because he was 61 years old, suffered from serious medical problems, and knew he was dying, he had falsely confessed to murdering Pratt to protect Pratt's son, who was the real killer. Howard

3

questioned the evidence that showed Pratt was killed in his car based on the time of death. He also argued that a knife found in his vehicle was not the murder weapon based on the size of Pratt's injuries and that he was not the murderer based on the absence of his DNA on the knife.

The jury rejected Howard's defensive theory, finding him guilty of murdering Pratt. After a sentencing hearing, the trial court sentenced Howard to 60 years' confinement.

## Standard of Review

We review a trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). There is no abuse of discretion if the trial court's ruling is within the zone of reasonable disagreement. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court's decision to admit extraneous offense evidence generally is within the zone of reasonable disagreement if the evidence is relevant for a non-character-conforming purpose and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). If the trial court's evidentiary ruling is correct under any applicable theory of law, we will not disturb it, even if the trial court gave a wrong or insufficient reason for the ruling. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

## Admission of Evidence

In his sole issue, Howard asserts that the trial court abused its discretion by admitting evidence that he shot at and threatened Pratt's son. Howard contends the evidence was inadmissible to prove character conformity and unfairly prejudicial. *See* TEX. R. EVID. 403, 404(b).

### A.     Applicable law

Evidence is relevant if it tends to make the existence of a consequential fact more or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. Relevant evidence generally is admissible. *See* TEX. R. EVID. 402. But Texas Rule of Evidence 404(b) bars evidence of extraneous bad acts merely to show character conformity. TEX. R. EVID. 401(b)(1). Such evidence is admissible for other purposes, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Extraneous offense evidence "that logically serves any of these purposes is 'relevant' beyond its tendency 'to prove the character of a person to show that he acted in conformity therewith.'" *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g).

"Rule 404(b) is a rule of inclusion rather than exclusion." *De La Paz*, 279 S.W.3d at 343. Its exceptions are neither mutually exclusive nor exhaustive. *Id.* The proponent of extraneous offense evidence "need not 'stuff' a given set of facts into

5

one of the laundry-list exceptions set out in Rule 404(b)." *Id.* But the proponent must "explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than 'bad character' or propensity." *Id.*

In murder prosecutions, article 38.36(a) of the Code of Criminal Procedure allows "testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. art. 38.36(a); *see also Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). Evidence of the general nature of the relationship between the accused and the victim—such as whether they were married, estranged, separated, or divorced—"is clearly admissible under this Article." *Garcia*, 201 S.W.3d at 702. "[I]n some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship." *Id.* at 702, 703–04. To be admissible, "[t]hese specific acts of violence must meet the requirements of the Rules of Evidence," including Rule 404(b). *Id.* Additionally, extraneous offense evidence offered for a permissible purpose may still be excluded under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403; *Garcia*, 201 S.W.3d at 703.

6

**B.     Relevance**

Howard contends that the State impermissibly used the extraneous offense to show that he acted in conformity with his violent character by killing Pratt. *See* TEX. R. EVID. 404(b)(1). He argues that the extraneous offense was not relevant for any non-character-conforming purpose because (1) Pratt's son—not Pratt—was the victim of the aggravated assault and (2) the aggravated assault was too remote in time from Pratt's death. The State responds that it offered the extraneous offense to show the nature of Howard's relationship with Pratt and his state of mind, i.e., his motive and intent.

When the accused's prior relationship with the victim is a material issue, "illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Garcia*, 201 S.W.3d at 703. For instance, in *Garcia*, the defendant was convicted of murdering his wife. *Id.* at 697. Before the murder, the defendant and his wife argued while they were driving in their car at night on a busy highway. *Id.* The defendant stopped the car, pushed his wife out of the car, and drove away, leaving her without her purse or cell phone. *Id.* The Court of Criminal Appeals held that the "car dumping" was admissible to show the relationship between the husband and wife, which was a material issue in the case. *Id.* at 703–04. More specifically, the "car dumping incident was relevant to circumstances surrounding their relationship immediately preceding the murder, i.e.,

that they had separated, attempted to reconcile, and sought marriage counseling, but were instead in the process of divorcing." *Id.*

Likewise, here, the relationship between Howard and Pratt was a material issue. The State's theory was that Howard killed Pratt because she wanted to end the relationship. The evidence that Howard fired a gun at Pratt's son, walked Pratt's son at gunpoint into a room where Pratt was present, and then asked Pratt if she loved her son illustrated the violent nature of Pratt's relationship with Howard. *See id.*; *see also* TEX. CODE CRIM. PROC. art. 38.36(a); TEX. R. EVID. 404(b)(2). That Howard directed the initial violence at Pratt's son does not undermine the reasonableness of the trial court's ruling that the nature-of-the-relationship evidence was admissible for a non-character-conforming purpose under Rule 404(b)(2). Because the incident took place in Pratt's presence and threatened her son's safety, it also was directed at her and reasonably could be viewed as an attempt by Howard to gain leverage over Pratt through violence. *See Garcia*, 201 S.W.3d at 703. The evidence thus provided context for Pratt's desire to end the relationship, giving weight to the State's motive-and-intent theory. *See id.*; TEX. R. EVID. 404(b)(2).

The passage of time between the aggravated assault of Pratt's son and Pratt's murder does not place the trial court's decision to admit the extraneous offense outside the zone of reasonable disagreement. The car dumping incident in *Garcia* occurred at least 18 months before the murder, yet the Court of Criminal Appeals

8

concluded it was relevant for a non-character-conforming purpose. *See* 201 S.W.3d at 697, 703. Only four months separated the aggravated assault of Pratt's son and Pratt's murder.

The trial court acted within its discretion in concluding that the evidence of the aggravated assault was relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character. *See* TEX. CODE CRIM. PROC. art. 38.36(a); TEX. R. EVID. 404(b)(2).

## C. Unfair prejudice

Howard also argues that the extraneous offense should have been excluded because it was unfairly prejudicial. This argument invokes Texas Rule of Evidence 403, which provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. "Evidence is unfairly prejudicial when it has 'an undue tendency to suggest that a decision be made on an improper basis.'" *Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) (quoting *Montgomery*, 810 S.W.2d at 389). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). Evidence should be excluded under Rule 403 only when there exists "a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

When undertaking a Rule 403 analysis, the trial court must balance:

(1) the inherent probative force of the evidence along with

(2) the proponent's need for that evidence against

(3) any tendency of the evidence to suggest decision on an improper basis,

(4) any tendency of the evidence to confuse or distract the jury from the main issues,

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Here, the probative value of the extraneous offense evidence and the State's need for it were high. As stated, the aggravated assault of Pratt's son happened only a few months before Pratt's murder and thus had significant probative value in illustrating not only the violent nature of the relationship around the time of Pratt's death but also Pratt's desire to end the relationship and Howard's motive in preventing that. *Cf. Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (extraneous offense occurring six months before charged offense was close enough in time to have probative value). Additionally, "[e]vidence showing motive to commit murder is a significant circumstance indicating guilt[.]" *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Howard argues that the need for the extraneous offense evidence was low for two reasons: (1) the State could prove the nature of the relationship from less prejudicial evidence such as the son's testimony that he witnessed Pratt and Howard argue on other occasions; and (2) his confession to killing Pratt in the 911 call diminished the State's need to prove motive and intent. We cannot agree.

Although Pratt's son testified that arguments between Pratt and Howard were increasing in frequency before Pratt was killed and that he once saw Howard raise his hand as if to hit Pratt, the extraneous offense was the only incident in which Howard threatened Pratt and her son with deadly force. Moreover, Howard's assertion of a diminished need for motive-and-intent evidence ignores his defensive theory calling his 911 confession into question. Howard claimed at trial that he confessed not because he murdered Pratt but to cover for someone else. We conclude that the first two factors, the probative force of the evidence and the State's need for it, weigh in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641–42.

The remaining factors do not show that the probative value of the evidence was substantially outweighed by its prejudicial effect or its tendency to mislead the jury. "When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice." *Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication). Howard

11

points to a jury note asking for a copy of the son's non-prosecution letter. But the jury also asked to see the DNA test results. Nothing in the record indicates the extraneous offense distracted the jury from the main issues of the case or was given undue weight because the jury was ill equipped to evaluate its probative force.

Considering the factors together, we conclude that the trial court's decision to admit the extraneous offense because its probative value was not substantially outweighed by the risk of unfair prejudice fell within the zone of reasonable disagreement. *See* TEX. R. EVID. 403. We therefore hold the trial court did not abuse its discretion by admitting the extraneous offense evidence.

We overrule Howard's sole issue.

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).