Affirmed and Memorandum Opinion filed March 15, 2011.



 

 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00318-CR



 

Carlos Jesus Vega, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 2nd 25th
District Court

Guadalupe County, Texas

Trial Court Cause No. 09-1010-CR



 

MEMORANDUM  OPINION

 

A jury found appellant Carlos Jesus Vega guilty of
aggravated sexual assault of a child and indecency with a child by contact.  See
Tex. Pen. Code Ann. § 22.021(a); 21.11(a)(1) (Vernon 2003).  The trial court
sentenced appellant to imprisonment for 30 years and 10 years, respectively,
and ordered the sentences to run consecutively.  We affirm.[1]




FACTUAL BACKGROUND

I.         History of
Abuse

The complainant, C.C., testified that she was approximately
10 or 12 years old and in third grade when her step-father, appellant, began
touching her breasts and vagina with his hand while he masturbated.  C.C.
testified that this activity occurred more than once a week in her home in
Seguin, Texas.  C.C. also testified that appellant once made her pose on her
hands and knees while he masturbated.  She stated that appellant told her not
to tell anyone unless she wanted him to go to jail or “see [her] mom hurt.” 
She testified that she did not want appellant to go to jail at that time
because he was “like a father to [her],” and she “didn’t want the family to
break up.”  

C.C. testified that her mother and appellant began to
have relationship problems.  She testified that when her mother’s relationship
with appellant was going well, her mother was happy; when it was not, her
mother was depressed and angry.  C.C. testified that she wanted to help her
mother stay happy.  C.C.’s mother encouraged C.C. to help her mother “get back
together” with appellant, and C.C. testified that she felt like this was a lot
of responsibility for someone her age.  C.C.’s mother and appellant separated,
and C.C. and her mother moved out of appellant’s home.

C.C. testified that she had been a good student who
didn’t get into trouble before the abuse began; after the abuse started, she
“became bad,” and “nothing mattered” to her anymore.  She became angry at her
mother because although C.C. had not told her mother about the abuse, she
“thought [her mother] knew, but [her mother] wouldn’t do anything about it.” 
She testified that if appellant had not sexually abused her, she “wouldn’t be
trying to hurt [herself], or getting into trouble, or staying in school.” 

Professional counselor Christina Castleberry
testified that she started counseling C.C. in 2006 after she was hospitalized
for threatening to jump from a building. Castleberry stated that “very often,”
C.C.’s mother and appellant would accompany her during the sessions.  She
testified that she did not recall C.C. making any negative statements about
appellant.

II.        Charged
Offenses

During C.C.’s spring break in March 2007 when she was
13 years old, C.C. testified that her mother took her to live with appellant
because of C.C.’s behavior problems.  C.C. testified that her mother had
nowhere else to take her except appellant’s house because (1) C.C. was not
speaking with her biological father at the time; (2) C.C.’s sister was “having
[her own] problems;” and (3) C.C.’s grandmother was angry with her.  

C.C. testified that she stayed with appellant for
five days.  C.C. spoke with her mother on the telephone and asked to be picked
up, but her mother refused because there was no electricity or running water in
her mother’s home.  

On the first two days, nothing unusual happened
between C.C. and appellant.  C.C. testified about what happened on the third
day:

A.        He just goes into my room and tries to like talk
me into stuff.

Q.        Okay.  When you say “talk you into stuff,” what —
what —

A.        Like he tried to tell me that he — for me to let
him have sexual —

Q.        Okay.  He — he’s asking you to have sex with him?

A.        Yes.

Q.        And what kind of things is he saying to you?

A.        Just like if — if I can let my boyfriend, then
why couldn’t I let him.

Q.        Okay.  And what did you say to him?

A.        It’s
not the same, and you’re just — you’re with my mom.  That’s not cool.

Q.        Uh-huh.

A.        And what I do with my boyfriend
is not something I had to do with my step-dad.

C.C. testified further that
appellant left for several hours, then returned to C.C.’s room.  C.C. was
watching television and listening to music on her bed.  She stated: “He just
starts — he just starts to touch me on my — my breast area, and then my vaginal
area,” over and under her clothes for six to eight minutes.  She testified that
he kissed her on her cheek and mouth.  She stated, “I can’t stop it, so I would
just zone out . . . and think of things.”  Afterward, appellant left her room. 
C.C. testified that she invited friends over to stay the night with her the
fourth day.  

On the fifth day, she testified that appellant
entered her bedroom around 2:00 a.m. or 3:00 a.m. and told her “that if [she]
give[s] it to [her] boy friend, [she] should give it to [appellant].” 
Appellant removed C.C.’s clothes and underwear and had sexual intercourse with
her.  C.C. testified that she closed her eyes and looked away during the abuse,
but that she saw appellant take a condom wrapper from the floor when he left
her bedroom.  C.C. testified that she stayed awake all night and “just squatted
in the corner” until her mother came to pick her up around 10:00 a.m. the next
morning.  C.C. testified that she did not tell anyone because, “I didn’t want
people judging me; and it was embarrassing, so I didn’t say nothing.”

III.      Outcry 

C.C. testified she moved in with her biological
father and step-mother about four months later because she was “being bad” and
she and her mother were not getting along.  During this time, C.C.’s
step-mother told C.C. that she should not be “out on the streets” at night
because “men could hurt [her].”  C.C. became very quiet.  When her step-mother
asked her what was wrong, C.C. informed her step-mother that appellant was
“doing some bad things” to her and that she did not want to say anything
because “it was scary.”  The step-mother testified that C.C. said she had been
molested.  The step-mother testified that C.C. cried throughout the
conversation and that she “cried with her.”[2] 
C.C. testified that when her biological father found out about the abuse, he
was “furious” and called the police.    

C.C. went to the hospital for an exam with Sexual
Assault Nurse Examiner (SANE) Cris Salley.  Salley testified that C.C.
complained of “[h]and to breast, and genital to genital” contact, as well as
“oral to neck” contact.  Salley testified that C.C. informed her about
“something that happened during spring break,” as well as “some older abuse
that went back for several years.”  Salley explained that she did not expect to
find any physical evidence of assault during the exam because C.C. informed her
that the events had taken place more than 96 hours earlier.  She also testified
that she did not expect to see any evidence of trauma because the tissues
around the anus and vagina are elastic and heal faster than any other part of
the body.  She explained that lack of physical evidence or signs of trauma does
not indicate that sexual abuse did not take place.  She testified that C.C.’s
demeanor during the exam was not unusual or unexpected.

C.C. told Salley that appellant had penetrated her
vagina with his penis prior to spring break.  C.C. testified at trial that this
part of her statement to Salley was not true.  C.C. explained that she made the
incorrect statement because she confused the events that took place during
spring break with other instances of prior abuse.  Salley testified that
children who have gone through serial abuse sometimes find it difficult to
separate different instances of abuse “[b]ecause it all tends to run together
in their mind.”[3] 


IV.      Investigation

Detective Curly Price with the City of Seguin Police
Department testified that he was investigating the case in 2007 when appellant
unexpectedly arrived at the police department to discuss the allegations that C.C.
had made against him.  Detective Price said appellant “was evasive,” “very
nervous,” “fidgety,” and “didn’t want to answer” Detective Price’s questions. 
Detective Price testified that appellant was “showing . . . all the classic
signs of somebody not wanting to telling [sic] the truth.”  Appellant
terminated the interview.  

Detective Price testified that he later visited
appellant’s home.  When appellant answered the door, he was initially energetic
but then his “face paled, and you could see fear in his face.”  Detective Price
testified that appellant “started acting sick,” but that he did not believe
appellant was actually sick.  Detective Price stated that appellant hid his
head behind the door “like a little kid trying to get away from his parents,”
and that he “actually stepped behind the door and tilted his head down, trying
not to make eye contact” before he shut the door.  Detective Price testified
that he found appellant’s behavior odd.

Appellant testified that he did not sexually assault C.C.
or touch her inappropriately.[4] 
He testified that when Detective Price visited him at his home, he initially
thought Detective Price was there to discuss an unrelated police report
appellant had made.  He explained that once he learned the nature of Detective
Price’s visit, he did not want to talk with Detective Price because “[Detective
Price] had an attitude to where [appellant] was guilty.”[5]

V.        Expert Testimony

Dr. William Lee Carter, Ph.D. testified that a delayed
outcry is common among victims of sexual abuse, especially when the perpetrator
is an authority figure and family member.  He testified that victims often are
unable to differentiate between multiple instances of serial abuse.  He
testified that victims often disassociate during the actual abuse and exhibit
psychological disturbance as a result of the abuse.  He explained that suicidal
gestures and depression are “not uncommon” among victims of sexual abuse, and
that victims often develop a “learned helplessness” that causes them to feel as
if they have no options but to live through the abuse and hope that “someday
it’s all over.”  Dr. Carter also testified that abuse may become more intense
over time as the victim matures and as the perpetrator learns that he has
“gotten away with it.”  

Dr. Carter testified that it could be unusual for an
alleged perpetrator to encourage a victim to seek counseling, although he
explained that such a perpetrator may not anticipate that the victim will tell
such a “deep, dark secret,” or may be “calling [the victim’s] bluff.”  Dr.
Carter acknowledged that he would take such information into consideration when
determining whether sexual abuse was taking place.  Dr. Carter also testified
that he would weigh information that an alleged victim had the option to stay away
from the perpetrator but failed to exercise those options; however, he
testified that he would look at the “options” from the victim’s perspective,
who may not have felt that she had a choice.  He testified that he would also
consider the fact that an alleged victim was pushing her mother to reunite with
the perpetrator, but explained that a victim may be afraid of a family member
that is sexually abusing her and nonetheless still love him.  

PROCEDURAL HISTORY

Appellant pleaded not guilty to the charges of
aggravated sexual assault of a child and indecency with a child by contact, and
the case was tried to a jury.  The jury was instructed: 

[Appellant] stands charged by
indictment with the offense of Aggravated Sexual Assault of a Child, and
Indecency with a Child, alleged to have been committed in Guadalupe County,
Texas, on or about the 14th, and 16th of March, 2007.

                        *                                  *                                  *

A person commits the offense of
aggravated sexual assault of a child if he intentionally or knowingly causes
the penetration of the sexual organ of a child younger than 14 years of age, by
any means.

A person
commits the offense of indecency by contact if with the intent to gratify the
sexual desire of any person he intentionally engages in sexual contact with a
child younger than 17 years old.

Sexual
contact means any touching by a person, of the anus, breast, or any part of the
genitals of a child, if committed with the intent to arouse or gratify the
sexual desire of any person.

The jury found appellant
guilty of both charges, and appellant elected to have the trial court assess
punishment.  The trial court sentenced appellant to imprisonment for 30 years
and 10 years, respectively, and ordered the sentences to run consecutively.

Appellant filed a timely motion for new trial,
arguing that the verdict “is contrary to the law and the evidence.”  Appellant
also claimed that the trial court wrongfully excluded the testimony of his
expert witness.  The trial court denied the motion.

Appellant contends in his first issue on appeal that
the trial court wrongfully prevented him from cross-examining C.C. regarding a
statement she allegedly made about drinking alcohol with her mother.  Appellant
argues in his second issue that the trial court should have permitted appellant
to present expert testimony to show that 
(1) appellant does not exhibit certain characteristics common to sex offenders;
and 
(2) C.C. exhibits certain traits that could make it more likely that she
falsified her allegations against appellant.  Appellant argues in his third
issue that the evidence is insufficient to support his convictions.  We address
appellant’s issues out of order.

ANALYSIS

I.         Sufficiency of
the Evidence

Appellant complains that the evidence is legally and
factually insufficient because (1) no one in the family witnessed the abuse,
despite the fact that C.C. testified that it occurred regularly over a number
of years; (2) the State presented no medical evidence to corroborate C.C.’s
story; and (3) the strained relationship between C.C.’s mother and appellant
put stress on C.C. and gave her a motive to fabricate the allegations. 

We address appellant’s sufficiency challenge under a
single standard for evaluating the legal sufficiency of the evidence to support
a finding on an element required to be proven beyond a reasonable doubt.  See
Brooks v. State, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality
opinion) (appropriate standard of review for sufficiency of the evidence
considers all evidence “in the light most favorable to the verdict” to
determine whether a jury was “rationally justified in finding guilt beyond a
reasonable doubt”); id. at 914 (Cochran, J., concurring) (concluding
that a separate factual sufficiency standard no longer applies in criminal
cases); Romero v. State, No. 14-09-01035-CR, 2010 WL 4880274, at *1
(Tex. App.—Houston [14th Dist.] Dec. 2, 2010, no pet. h.); see also Valdez
v. State, No. 04-09-00420-CR, 2010 WL 5269818, at *6 (Tex. App.—San Antonio,
Dec. 15, 2010, no pet.).

A jury is in the best position to evaluate the
credibility of witnesses, and we afford due deference to the jury’s
determinations.  Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006).  The jury may choose to believe some testimony and disbelieve other
testimony.  Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). 
Reconciling conflicting testimony is within the exclusive province of the
jury.  See Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). 
  

Appellant’s convictions are supportable on C.C.’s testimony
alone, even if we were to agree with appellant’s assertion that it was
uncorroborated.  See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005)
(applicable to convictions under chapter 21, section 22.011, or section 22.021
of the Texas Penal Code); see also Tex. Pen. Code Ann. §§ 21.11
(indecency with a child) and 22.021 (aggravated sexual assault).[6] 
This is true regardless of whether anyone else failed to witness the abuse or
whether C.C.’s SANE exam showed signs of physical injury or trauma.  See Tex.
Code Crim. Proc. Ann. art. 38.07.  The jury was entitled to believe C.C.’s
testimony, despite appellant’s argument that family-related stress could have
prompted C.C. to fabricate her allegations.  See Marshall, 210 S.W.3d at
625.  

We overrule appellant’s third issue.

II.        Other Issues

Appellant argues that the trial court wrongfully
prevented him from cross-examining C.C. regarding a statement she allegedly
made about drinking alcohol with her mother.  Appellant also argues that the
trial court should have permitted appellant to present expert testimony to show
that (1) appellant does not exhibit certain characteristics common to sex
offenders; and (2) C.C. exhibits certain traits that could make it more likely
that she falsified her allegations against appellant.  

We review the trial court’s decision to limit
cross-examination for abuse of discretion.  Sansom v. State, 292 S.W.3d
112, 118 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d).  Similarly, we
review the trial court’s decision to admit or exclude evidence under an abuse
of discretion standard.  Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim.
App. 2001).  “Appellate courts, bound by cold appellate records, must afford
the trial courts discretion because the trial court is in a superior position
to evaluate the impact of the evidence.”  Montgomery v. State, 810
S.W.2d 372, 378–79 (Tex. Crim. App. 1990).  A trial court abuses its discretion
by acting without reference to any guiding rules or principles.  Id. at
380.  A trial court does not abuse its discretion merely because it decided a
matter differently than would the appellate court.  Id.  We will not
reverse the trial court’s ruling as long as it falls within the zone of
reasonable disagreement.  Burden, 55 S.W.3d at 615.

A.               
Statements Regarding Prior Alcohol Use

The following exchange took place outside the
presence of the jury:

APPELLANT’S COUNSEL:  [C.C.] made an allegation to MHMR and
to CPS that she would drink with her mom.  Now, I want to know whether or not
that’s true, or whether — whether she actually drank with her mom, and whether
she remembers making that statement.

STATE:  Relevancy.

THE COURT:  What is the relevancy?

APPELLANT’S COUNSEL:  Because if she did drink with her
mom, I think that would question her ability to recollect the events, if she
was drunk.  Number two, if she wasn’t drinking with her mom, I think it’s
evidence that she was making — lying in order to try to get away from her mom,
and using —

THE COURT:  I’ll sustain the
objection.

Evidence is relevant if it has “any tendency to make
the existence of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the evidence.”  See
Tex. R. Evid. 401; Garcia v. State, 201 S.W.3d 695, 703 (Tex. Crim.
App. 2006).  Evidence that is not relevant is inadmissible.  Tex. R. Evid. 402. 


Appellant argues that if the trial court had allowed
the question and C.C. testified that she sometimes drank alcohol with her
mother, such testimony would have been admissible for credibility purposes.  He
argues that C.C.’s alleged alcohol use may have impaired her ability to
recollect events.  However, such testimony would not be relevant to C.C.’s
ability to recollect the events of the crimes alleged; these occurred when C.C.
was staying with appellant, not her mother, during spring break.  See Tex.
R. Evid. 608(b); Lagrone v. State, 942 S.W.2d 602, 612–613 (Tex. Crim.
App. 1997) (“[A]” witness’[s] credibility is only subject to attack on
cross-examination when their perceptual capacity is physically impaired by the
intoxicating effects of alcohol or drugs during their observation of pertinent
events. . . .  Counsel must demonstrate an actual [substance]-based mental impairment
during the witness’[s] observation of the crime in order to pursue impeachment
of a witness’[s] perceptual capacity with evidence of drug addiction [or prior
alcohol use].”).  The trial court acted within its discretion in concluding
that C.C.’s alleged prior use of alcohol “with her mom” was not relevant to
whether C.C. could accurately recollect events that took place when C.C. was
not staying in her mother’s home.  See Burden, 55 S.W.3d at 615; Lagrone,
942 S.W.2d at 612–13.          

Alternatively, appellant argues that if C.C.
testified that she did not drink alcohol with her mother, appellant would have
impeached C.C. with prior inconsistent statements made to MHMR and CPS.  Generally,
a party is not entitled to impeach a witness on a collateral matter.  Ramirez
v. State, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990).  A collateral matter
is one that is not relevant to proving a material issue in the case.  See id.
 “‘The test as to whether a matter is collateral is whether the cross-examining
party would be entitled to prove it as a part of his case tending to establish
his plea.’”  Id. (quoting Bates v. State, 587 S.W.2d 121, 133
(Tex. Crim. App. 1979)).  The trial court acted within its discretion in
concluding that the issue of whether C.C. lied to MHMR or CPS about drinking
with her mother is not relevant to prove whether appellant committed a sexual
assault or indecent act against C.C.  See Burden, 55 S.W.3d at 615; Ramirez,
802 S.W.2d at 675.[7] 


Even if the trial court had erred in limiting appellant’s
cross-examination of C.C. on this issue, such error would be harmless because
it did not affect appellant’s substantial rights.  See Tex. R. App. P.
44.2(b).  A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury’s verdict.  Morales v.
State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  A criminal conviction
should not be overturned for non-constitutional error if the appellate court,
after examining the record as a whole, has fair assurance that the error did
not influence the jury or had but a slight effect.  Id.  

We consider the entire record to decide whether
non-constitutional error is reversible.  Id.  Important
considerations include “any testimony or physical evidence admitted for the
jury’s consideration, the nature of the evidence supporting the verdict, the
character of the alleged error, and how [the alleged error] might be considered
in connection with other evidence in the case.”  Motilla v. State, 78
S.W.3d 352, 355 (Tex. Crim. App. 2002).  

The jury heard extensive testimony from C.C.
regarding years of sexual abuse by appellant.  C.C. also testified in detail as
to the events that took place in March 2007.  Testimony from Salley and C.C.’s
step-mother corroborated C.C.’s version of her subsequent outcries.  Dr.
Carter’s testimony regarding sexual abuse victims was not inconsistent with
evidence of C.C.’s behavior or her allegations against appellant.  

When asked to consider whether certain behavior —
such as appellant’s support of C.C.’s counseling, or C.C.’s attempts to reunite
her mother and appellant — would undermine the credibility of a victim’s
allegations, Dr. Carter acknowledged the relevance of such facts.  However, he also
offered alternative explanations for such behavior that would be consistent
with legitimate allegations of abuse.  

Appellant testified that he never sexually assaulted
or inappropriately touched C.C.  Detective Price testified that appellant did
not seem truthful when he was questioned about the allegations on two separate
occasions.  

The evidence supporting the jury’s verdict was almost
exclusively testimonial in nature.  See Motilla, 78 S.W.3d at 355.  Although
no physical evidence was admitted to corroborate C.C.’s allegations, Salley
testified that she did not expect to find such evidence in this case.    

If C.C. had testified that she did not drink alcohol
with her mother, appellant would have attempted to impeach C.C.’s credibility
with her alleged prior inconsistent statement to MHMR and CPS.  We cannot say
that an inconsistent statement on such an isolated issue would have had any
effect on the jury’s apparent conclusion that C.C.’s overall testimony was
credible.  If C.C. had testified that she did drink alcohol with her mother, we
cannot say that it would have had any effect on the jury’s conclusion that C.C.
accurately perceived the events that took place in appellant’s home in March
2007.  We accordingly characterize any asserted error in limiting appellant’s
cross-examination of C.C. on this point as irrelevant in nature.  See
Motilla, 78 S.W.3d at 355.  

Such testimony would not have influenced the jury, or
would have only had a slight effect, in light of the other witnesses’ testimony
against appellant.  See id.  Any alleged error was therefore harmless.  See
Tex. R. App. P. 44.2(b); Motilla, 78 S.W.3d at 355.   We overrule
appellant’s first issue.
B.        Expert Testimony

Appellant argues that the trial court should have
allowed him to present expert testimony from Dr. Aaron Pierce, Ph.D.  Appellant
intended to offer Dr. Pierce’s testimony to show that (1) appellant does not
exhibit certain characteristics common to sex offenders; and (2) C.C. exhibits certain
traits that could make it more likely that she falsified the allegations
against appellant.  The trial court allowed appellant to examine Dr. Pierce
outside the presence of the jury, then ruled that the proposed testimony was inadmissible. 


Appellant complains on appeal that the trial court
should have found Dr. Pierce’s testimony about characteristics common to sex
offenders “reliable and relevant” under Texas Rule of Evidence 702.[8] 
Appellant lists the factors relevant to the trial court’s reliability
determination, but he does not cite to any evidence in the record to support his
contention that these factors weigh in favor of reversing the trial court’s
ruling in this case.  Appellant also does not cite to any authority to support
his position that the trial court wrongfully excluded certain testimony on this
ground.   

Additionally, appellant excerpts part of Dr. Pierce’s
testimony about C.C.’s characteristics in his brief, but appellant does not explain
why this testimony was wrongfully excluded or cite to any authority to support
such an argument.

Because appellant has not presented anything for our
review, we overrule appellant’s second issue.  See Tex. R. App. P.
38.1(i).  

CONCLUSION

Having overruled all of appellant’s issues on appeal,
we affirm the judgment of the trial court.  

 

                                                                        

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Brown,
Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
Appellant’s case was originally filed with the Fourth Court of Appeals and was
transferred to this court.  We apply precedent from this court unless it would
be inconsistent with precedent from the transferor court.  See Tex. R.
App. P. 41.3.





[2]
C.C.’s step-mother admitted to a conviction for a failure to identify that
occurred approximately 12 years ago.  See Tex. Pen. Code Ann. § 38.02
(Vernon 2003).





[3]
Detective Juan San Miguel testified that C.C. was interviewed at the Child
Advocacy Center by a forensic interviewer and explained that process. 
Detective San Miguel also testified that an outcry was made during the
interview.  He explained that he coordinated with Child Protective Services to
set up the interview, but that the investigations were separate.





[4]
Appellant admitted to two previous convictions for theft.  See Tex. Pen.
Code Ann. § 31.03 (Vernon 2003).





[5]
Appellant also called as a witness Child Protective Services investigator
Sylvia Tyson, who testified that she spoke with Salley, Detectives San Miguel
and Price, and C.C.’s biological parents and step-mother during her month-long
investigation of C.C.’s allegations.  She testified that the investigation was
no longer pending at the time of trial.  In response to a question asking
whether she found “any inconsistencies” after reviewing any statements and
“various reports” made in the case, Tyson answered, “Yes.”  Tyson was not
questioned further on any issue.





[6]
The rule that the victim’s uncorroborated testimony will support a conviction
applies to a victim who was more than 17 years old at the time of the offense
only if that victim informed any person, other than the defendant, of the
alleged offense within one year after the date on which the offense is alleged
to have occurred.  See Tex. Code Crim. Proc. Ann. art. 38.07(a),
(b)(1).  Although C.C.’s step-mother and Salley testified regarding C.C.’s
outcry several months after March 2007, there was no requirement that C.C.
inform another person of the alleged offenses to benefit from this statute
because she was younger than 18 when the offenses occurred.  See id.





[7]
Appellant also argues that the trial court’s ruling prevented him from
effectively cross-examining C.C. and violated appellant’s rights under the
Confrontation Clause.  Appellant failed to raise this argument to the trial
court and has waived it on appeal.  See Tex. R. App. P. 33.1(a).





[8]
The record does not reveal that the trial court excluded the testimony based on
an objection under Texas Rule of Evidence 702.