COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| GREG DUDLEY, | § | |
| | | No. 08-17-00125-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 120th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20150D02228) |
| | § | |

## **O P I N I O N**

A jury found Greg Dudley guilty of the murder of Deanna Stewart.  Dudley appeals his conviction based on two evidentiary issues.  First, he argues the trial court erred by admitting evidence of prior bad acts.  Second, he argues the court erred by admitting two photographs of the deceased victim taken at the scene.  As to both issues, Dudley argues the court's error resulted in harm requiring reversal of his conviction.  We affirm.

### BACKGROUND

Dudley and Deanna Stewart lived together with Deanna's sixteen-year-old daughter Adrianna  in a home in El Paso.  The couple had been dating for eight or nine years.  On Friday, April 10, 2015, Dudley and Deanna dropped off Adrianna at school after first taking her to a doctor's appointment.  Adrianna started walking home from school after 4 p.m.  Approaching her

home, she noticed that both the screen door and wooden front door were partially open. As she tried to enter, the front door closed on her as if forcefully shut. Through the door, she then heard Dudley ask her to "wait one minute." Dudley soon exited and told her that he and her mother had gotten into an argument and her mother had left. After locking the doors behind him, Dudley asked Adrianna to come with him and together they would go looking for her.

Dudley drove them to the nearby home of Jackie Medina, a cousin of Adrianna and niece of Deanna. After discovering that Deanna was not at Jackie's, Dudley left Adrianna there and told her he would be searching for Deanna. Adrianna stayed at Jackie's the entire weekend. For the rest of Friday and all day Saturday, Adrianna continuously called or sent text messages to her mother, but she was never able to reach her. On Sunday, April 12, Adrianna called her older sister Diamond to pick her up from Jackie's and take her back home because she had school the next morning. Diamond picked up Adrianna and their aunt Dawn Medina and drove them all to Deanna and Dudley's house. When they arrived, Adrianna unlocked the door and let Dawn enter. Adrianna dropped her backpack inside but quickly went back out to retrieve a bag from Diamond's car. Soon, Dawn came running out, "going frantic," describing she had discovered Deanna's body lying on the floor with blood around her. Panicky, Dawn screamed to call the police. Officers called to the scene discovered Deanna's body with a single gunshot wound to her back. In a later autopsy by Dr. Janice Diaz-Cavalliery, she concluded the manner of death was homicide.

Cell phone records showed that at 1:46 p.m. (MST) on Friday, April 10, Dudley texted the following message to his son: "Hey I am going away for a bit. I love you guys. Behave." Another message he sent said, "I'm going away for a long time." Cell phone location data showed that Dudley's phone accessed an antenna tower consistent with him being at home at 2:27 p.m. on that

2

day. The records further showed that Dudley spent the afternoon of Saturday, April 11, in various locations in El Paso. At one point, officers had encountered Dudley asleep in a parked vehicle with his head resting on the steering wheel. He was questioned for driving while intoxicated. On Sunday, April 12, officers located Dudley at his brother's house and brought him to the police station for questioning. Later, he was placed under arrest.

By indictment, the State charged Dudley with Deanna's murder. At trial, in addition to several witnesses, the State offered approximately one hundred photographs including State's Exhibits 105 and 106, two photographs depicting Deanna's body that were taken by an officer at the scene. Although Dudley objected to the admission of Exhibits 105 and 106, the court admitted both photographs but prohibited the State from displaying a portion of one, Exhibit 106, because it showed Deanna's partially exposed torso. While testifying, Dr. Diaz-Cavalliery referenced State's Exhibit 105 when describing the timeline of Deanna's death, and particularly noted the presence of post-mortem lividity shown by the pooling of blood in her face.

Other evidence presented by the State included incidents of discord and conflict in Dudley and Deanna's relationship. Deanna's older daughter Diamond testified to hearing the couple argue frequently when she was still living with them in 2011 and 2012. Diamond particularly described events of July 31, 2011, which had led to her calling 911 for police assistance. Another incident involved Officer John Garcia. In 2012, Officer Garcia was dispatched to Deanna and Dudley's residence to assist Deanna with removing her belongings from the home. Officer Garcia testified that Dudley admitted he had grabbed Deanna's thigh during the argument that preceded the call. Another incident involved Deanna's daughter Adrianna who testified about an incident that occurred a year or two before Deanna's death when the family lived in a home on Nancy

3

McDonald. Adrianna heard loud yelling and crying coming from her mother's bedroom. When she went downstairs, she saw Deanna lying on the floor while holding her hand to her face. Dudley stood over her with his hand balled up in a fist.

Evidence also included information about Deanna and Dudley's relationship generally. Adrianna testified that she informed investigating officers that "two to three times a week" in the months leading up to her mother's death, Dudley would make a hand gesture like that of a handgun and point it at Deanna when they argued. Deanna's niece, Jackie Medina, also testified at trial that she believed Deanna and Dudley's relationship had been volatile. Jackie gave Deanna rides home after she had walked off during their arguments. On one such occasion, Jackie picked up Deanna from a police station.

After deliberating, the jury convicted Dudley of murder and sentenced him to eighty years' imprisonment. This appeal follows.

## DISCUSSION

Dudley appeals his conviction in three issues. First, he argues that the trial court erred by admitting evidence of his alleged prior bad acts regarding the incidents of alleged violence between himself and Deanna in violation of TEX. R. EVID. 403 and 404(b). Second, he argues that the trial court violated Rule 403 by admitting two photographs of Deanna's body taken at the crime scene because the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. Finally, Dudley argues that these combined errors require reversal under TEX. R. APP. P. 44.2(b). We discuss each issue in turn.

### Extraneous Offense Evidence

*Rule 404(b)*

4

In his first issue, Dudley argues that the trial court erred by admitting evidence of his prior bad acts committed against Deanna during their relationship because the evidence was admitted for an improper character conformity purpose. We review the trial court's admission of extraneous offense evidence under the abuse of discretion standard. *Page v. State*, 213 SW.3d 332, 338 (Tex. Crim. App. 2006). The trial court's decision will be upheld if it falls within the zone of reasonable disagreement. *Id.* An appellate court should not set aside the trial court's rulings absent a showing that the trial court has abused its discretion. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990); *Stembridge v. State*, No. 08-07-00181-CR, 2008 WL 4764116, at *2 (Tex. App.—El Paso Oct. 30, 2008, no pet.) (not designated for publication).

Evidence of a defendant's prior crime, wrong, or other act may not be used to establish his conformity with a pertinent character trait on a particular occasion. TEX. R. EVID. 404(b)(1). Nevertheless, such character evidence may be used for another non-conformity purpose, such as rebuttal of a defensive theory or proving, *inter alia*, the defendant's motive, opportunity, intent, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2).

During the opening statement by the defense, his counsel described Dudley and Deanna as "folks like you and me and everybody else," and stated that on the day that Deanna went missing, there was no evidence of "eruptions" between her and Dudley. Later, over defense objections, the State presented evidence which recounted instances of prior violence occurring between Deanna and Dudley. Deanna's older daughter Diamond testified about an incident that occurred on July 31, 2011. Diamond called 911 after Deanna came running into her room. Dudley tried pushing the door open while Diamond requested police assistance. Over the defense's objections, the State presented Diamond's 911 call in which she asked for help and reported that her mother's boyfriend

5

had just hit her mother. Deanna can be heard crying while Diamond reports that her mother's hand was bleeding.

The State also presented testimony from Officer Scott Grace who had responded to the 911 call on July 31, 2011. Officer Grace testified that he spoke to Dudley who accused Deanna of slapping, scratching, and punching him while he was driving. To stop her, Dudley claimed he bit her on her forearm and near her index finger and thumb. When Officer Grace interviewed Deanna, she reversed the accusation. He had a difficult time determining who had been the initial aggressor as both parties were intoxicated and gave conflicting stories. Based on his assessment, Officer Grace arrested Deanna after concluding that she had initiated the aggression, and Dudley was not arrested. Later, however, the prosecutor assigned to the case dismissed the charge that had been filed against Deanna.

Next, the State presented testimony from Officer John Garcia. On September 3, 2012, he responded to an incident in which Deanna requested police assistance in removing her belongings from her residence. While there, Dudley admitted that he had grabbed Deanna's thigh during their argument. Officer Garcia confirmed he could see a redness in the area mentioned and he took photographs. Although Dudley was initially charged with assault, the District Attorney's office later declined the case against him.

The State also presented testimony from Adrianna about another prior incident. When living in their past residence, Adrianna heard yelling and crying coming from Deanna's bedroom. When she went into the bedroom, she saw Deanna lying on the floor holding her face while Dudley was standing over her with his fist closed. Adrianna took Deanna to her bedroom and noticed that she had a red mark around her eye. Although Adrianna wanted to call police, she did not do so

6

because Deanna had asked her not to.

Finally, the State also presented Jackie's testimony that she believed Deanna's relationship with Dudley had been "volatile." Once she picked Deanna up from a police station, and several other times from the streets near her home after incidents occurred between her and Dudley. Jackie also testified that she occasionally noticed bruises on Deanna's arms and legs.

The defense objected to all the testimony of prior incidents except for Jackie's testimony based on Rules 403 and 404, and the trial court overruled the objections and admitted the evidence. Responding to this evidence, the defense presented its theory that the relationship between Deanna and Dudley was not as volatile as portrayed, and more pointedly argued that Dudley could not have killed Deanna because she died on a Sunday morning when Dudley was in a different area of the city. During the parties' arguments, only the State mentioned the prior incidences between Dudley and Deanna, arguing that the evidence showed their relationship was "not well emotionally, not well physically."

We begin our analysis by first addressing the State's argument that the trial court did not err in admitting testimony regarding Dudley's relationship with Deanna because Dudley "opened the door" to the admission of the evidence. Texas courts have recognized that a defendant may "open the door" to otherwise inadmissible, extraneous offense evidence by putting forth a defensive theory, i.e., by commenting in an opening statement or eliciting testimony from a witness, that invites the opposing party to respond. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Here, defense counsel argued during his opening statement that Deanna and Dudley were "folks like you and me and everybody else," and that on the day of Deanna's disappearance, there was no evidence of rising tension or conflict between them.

We hold that defense counsel's statement that Deanna and Dudley were "folks like you and me and everybody else" opened the door to the admission of evidence tending to rebut that theory. This statement tended to portray the relationship between Deanna and Dudley as being as ordinary as any other couple. Responding, the State offered evidence tending to rebut that theory demonstrating that their relationship included incidences of discord, strife, and violence. As such, we hold that the trial court's admission of testimony about their relationship fell within the court's zone of reasonable disagreement, thus no abuse of discretion occurred. *See Bass*, 270 S.W.3d at 563 (trial court did not abuse its discretion in admitting extraneous offense evidence where trial counsel opened the door to the admission of the evidence while making his opening statement).

Even if Dudley had not opened the door to the admission of this evidence, we nonetheless hold that the trial court did not abuse its discretion. On appeal, Dudley contends that the evidence was inadmissible under Rule 404(b) because the evidence was used for a conformity-with-character purpose, and the evidence did not have a purpose other than as improper character evidence. He further argues that the trial court misapplied TEX. CODE CRIM. PROC. ANN. art. 38.36(a),[1] which directs the trial court in a murder trial to permit the parties to admit evidence of the prior relationship of the defendant and victim, arguing that the rule permitting admission of such evidence is incompatible with Rule 404(b). We disagree.

As the State points out, article 38.36(a) operates congruent with Rule 404(b), and the two do not conflict with each other. *See Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006).

---

[1] In its entirety, TEX. CODE CRIM. PROC. ANN. art. 38.36(a) reads:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

8

This is so because article 38.36(a) allows the use of a defendant's prior bad acts to establish the defendant's prior relationship with the victim, which is a proper non-character conformity purpose admissible under Rule 404(b). *See id.* In this case, the State was entitled to present evidence pertaining to Dudley's motive and intent to commit the offense since the evidence of his prior violent relationship with Deanna was relevant as a circumstance tending to prove the commission of the charged offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a); TEX. R. EVID. 404(b) (extraneous offense evidence may be admitted to prove, *inter alia*, motive or intent); *see also Foy v. State*, 593 S.W.2d 707, 707–08 (Tex. Crim. App. 1980) (the State may offer evidence to show motive for the commission of an offense because it is relevant to prove the actual commission of the offense). Likewise, Dudley's motive for committing the murder was a material issue required to resolve the case. *See Foy*, 593 S.W.2d at 708 (evidence of prior misconduct toward the victims of the offense charged was admissible as circumstantial evidence of a motive for committing the charged offense). As such, the evidence of Dudley's prior violent relationship with Deanna was properly admitted for non-character conformity purposes, and we hold that the trial court did not abuse its discretion in admitting the evidence on these grounds.

*Rule 403*

Dudley next argues that the trial court abused its discretion in admitting the evidence of his relationship with Deanna because the evidence's probative value was substantially outweighed by the risk of unfair prejudice in violation of TEX. R. EVID. 403. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. TEX. R. EVID. 401. Nevertheless, relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice,

9

confusing the issues, misleading the jury, causing undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. Rule 403 "favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Dawkins v. State*, 557 S.W.3d 592, 605 (Tex. App.—El Paso 2016, no pet.) (citing *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007)). In determining whether the trial court correctly admitted evidence in the face of a Rule 403 objection, we consider the following factors by weighing: "(1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative." *Knight v. State*, 457 S.W.3d 192, 204 (Tex. App.—El Paso 2015, pet. ref'd) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

Here, the extraneous offense evidence pertaining to Deanna and Dudley's relationship had probative value and the State had the need for the evidence because it tended to establish Dudley's motive for committing the offense and tended to disprove the defense's theory that their relationship had been ordinary and just like any other. *See, e.g., Brock v. State,* 275 S.W.3d 586, 588–90 (Tex. App.—Amarillo 2008, pet. ref'd) (evidence of prior bad acts committed several years before the charged offense were nonetheless probative evidence of defendant's motive to murder victim). The State also had need for the evidence because the case was founded on circumstantial evidence, without direct evidence linking Dudley to Deanna's murder, and such evidence of Dudley's motive to commit the offense was necessary to establish his guilt. *See*

10

*Gibson v. State*, No. 11-99-00165-CR, 2000 WL 34235110, at *2 (Tex. App.—Eastland June 15, 2000, no pet.) (not designated for publication). On the other hand, the complained-of evidence was unlikely to cause the jury to give it undue weight in their decision making, nor was it emotionally charged, since the details of the extraneous evidence were not as emotional or graphic as that of the charged offense. Neither did the evidence have any tendency to distract the jury from the main issues in the case. Finally, the evidence was not unnecessarily cumulative and did not take an inordinate amount of time to develop or present.

As such, we hold that the trial court did not abuse its discretion in admitting the extraneous offense evidence over Dudley's Rule 403 objections. *See Brock*, 275 S.W.3d at 590 (evidence of defendant's prior instances of domestic violence against his wife in trial for her murder were not unfairly prejudicial where (1) the evidence explained their relationship and established the motivation for her murder; (2) the evidence did not tend to confuse the jury or impact it in an irrational way; and (3) the evidence was not unnecessarily cumulative and did not take an inordinate amount of time to develop); *Gibson*, 2000 WL 34235110, at *2 (evidence of defendant's extraneous offenses were properly admitted in face of Rule 403 objection where the State's need for the evidence was great because of a lack of direct evidence establishing the defendant's guilt). Dudley's first issue is overruled.

**Crime Scene Photographs**

In his second issue, Dudley argues that the trial court erred by admitting State's Exhibits 105 and 106, which were crime scene photographs depicting Deanna's body, contending that the probative value of the photographs was substantially outweighed by their prejudicial effect. The admission of gruesome photographs depicting a deceased person is reviewed under the same abuse

11

of discretion standard set forth above. *See Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010); *Dawkins*, 557 S.W.3d at 604. Likewise, we address the issue under the same Rule 403 standard as stated above. *See Chavez*, 2018 WL 2715219, at *8–9.

During its case-in-chief, the State offered approximately one hundred color photographs depicting the crime scene. Included in these photographs was State's Exhibit 105, which was a photograph of Deanna lying on her back showing her t-shirt soaked in blood, but her face only partially shown, and State's Exhibit 106, which shows her face and part of her exposed bloody abdomen and chest. Dudley objected to the admission of Exhibits 105 and 106, arguing that their probative value was outweighed by their prejudicial effect. The State responded that the photographs depicted the crime scene and the gunshot wound on the body, and further established that the body had begun to decompose at the time when the photographs were taken. The trial court overruled Dudley's objections and admitted these two photographs, with the caveat that the State prevent the jury from seeing a portion of State's Exhibit 106 showing the bottom portion of Deanna's torso. The State referenced these photographs while questioning a crime-scene officer about his investigation. The medical examiner, Dr. Diaz-Cavalliery, also referenced State's Exhibit 105 while testifying about her findings regarding Deanna's cause of death The record does not reflect that the photographs were displayed by the parties during their arguments.

On appeal, Dudley argues that Exhibits 105 and 106 were unfairly prejudicial and had low probative value, in violation of Rule 403. He contends that they were "gruesome" because they depicted Deanna's bloody body, and one of the photographs depicted her face and her partially exposed abdomen and bra. Dudley also argues that the photographs were unnecessarily cumulative since the trial court admitted at least twenty-three other photographs of the crime scene

12

which also showed at least some portion of Deanna's body. Likewise, he contends that the photographs were unnecessarily cumulative of testimony from officers and Dr. Diaz-Cavalliery, who necessarily described the crime scene and established Deanna's cause of death, respectively. We disagree.

We have previously held that a trial court does not violate Rule 403 in admitting photographs depicting a deceased person where the evidence is helpful to the jury in visualizing the crime scene and the condition of the victim due to the injuries inflicted, understanding law enforcement's investigation of the offense, establishing the State's theory of guilt, or explaining testimony from a medical examiner. *See, e.g., Chavez,* 2018 WL 2715219, at \*8–10; *Dawkins,* 557 S.W.3d at 605–06; *McNair v. State,* No. 08-16-00033-CR, 2018 WL 2356405, at \*8–10 (Tex. App.—El Paso May 24, 2018, no pet.) (not designated for publication). Here, the photographs had probative value because they aided the jury in visualizing the state in which Deanna's body was discovered and helped to explain Dr. Diaz-Cavalliery's testimony regarding her findings after performing an autopsy. The State also had need for the photographs because they depicted the fixed lividity on Deanna's face, which tended to establish Dr. Diaz-Cavalliery's testimony regarding Deanna's time of death and refuted Dudley's alibi. Although the photographs are gruesome, they were not likely to cause the jury to make a decision on an inappropriate basis, distract the jury from the main issues, or to give undue weight to the evidence. Likewise, the evidence did not consume an inordinate amount of time to develop, nor were they unnecessarily cumulative of other evidence.

As such, we hold that the trial court's decision to admit the photographs was within the zone of reasonable disagreement and did not constitute an abuse of discretion. *See Chavez,* 2018

WL 2715219, at *8–10 (trial court did not violate Rule 403 in admitting graphic autopsy photographs where they were helpful in clarifying a medical examiner's testimony and helped establish the victim's cause of death, and where the evidence did not take an inordinate amount of time to develop and was not unnecessarily cumulative of other evidence); *Dawkins*, 557 S.W.3d at 605–06 (upholding trial court's decision admitting gruesome autopsy photographs over defense's Rule 403 objection, reasoning in part that the presentation of gruesome photographs in a murder trial is "par for the course" and that jurors are expected to view such evidence in murder trials); *McNair*, 2018 WL 2356405, at *8–10 (trial court did not violate Rule 403 in admitting gruesome photographs of a deceased victim's body where the photographs depicted the crime scene and the condition of the victim's body because the photographs tended to aid the jury in understanding the manner and means of the victim's death and corroborated the State's theory of guilt).  Accordingly, we overrule Dudley's second issue.

Because we hold that the trial court did not abuse its discretion in admitting the extraneous offense evidence or the photographs depicting Deanna's body, we need not address whether Dudley was harmed by the trial court's admission of the evidence presented.  *See* TEX. R. APP. P. 47.1; *Chavez*, 2018 WL 2715219, at *10.  Accordingly, we will not address Dudley's third issue.

## CONCLUSION

Having overruled the issues addressed, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

April 24, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

14