**Affirmed and Opinion Filed July 23, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00011-CR**

**SEBASTIAN CARLOS ROMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 071029**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Partida-Kipness

A jury convicted appellant Sebastian Carlos Roman of murder by intentionally or knowingly causing the death of his wife, Maria Romano Ortiz Enriquez, by shooting her with a firearm. The trial court sentenced Roman to ninety- nine years' confinement. In two issues, Roman complains of the admission of certain extraneous offense evidence admitted over his objections at trial. We overrule Roman's issues and affirm the trial court's judgment.

## BACKGROUND

Maria Romano Ortiz Enriquez died on June 26, 2018, after being shot in the head at close range with a .22 rifle. Roman was charged and indicted for causing

Maria's death. The indictment alleged two counts of murder and one count of aggravated assault with a deadly weapon causing serious bodily injury to a family member. Roman pleaded not guilty, and the case proceeded to a jury trial on October 29, 2019.

Before trial, the State filed its "Notice of Intent to Offer and Introduce Evidence of Extraneous Offenses." The Notice provided a list of extraneous offenses the State intended to introduce at trial. The list included information regarding an extra-marital affair Roman had with Rebeca Soria Billar, and incidents of abuse by Roman on Maria that purportedly occurred in the six months before Maria's death. Roman filed written objections to the admissibility of the extraneous offenses, a motion for limiting instruction pursuant to Rule 404(b) of the rules of evidence, and a motion in limine as to the extraneous offenses. Before voir dire, Roman objected to the State's offer of the extraneous offense evidence. The trial court overruled Roman's objections but granted his request for a limiting instruction. The State offered testimony from several witnesses regarding extraneous offenses during its case in chief. On appeal, Roman complains of the following testimony:

- **Roman and Maria's youngest daughter, MDJ**

MDJ described Maria's relationship with Roman as "like, just criticizing, angry" because Roman "would be criticizing at her [Maria] and angry." MDJ further testified that she had concerns about Maria's safety and her own safety around

Roman. Although Roman "always" had a critical attitude toward Maria, MDJ testified that the situation got progressively worse.

- **Roman's former mistress, Rebeca Soria Billar**

Billar testified she had an affair with Roman for more than six months in 2017. At the time, Roman and his family were renting a home from Billar. She testified that Maria discovered the affair and asked to meet with Billar. She described Maria as upset, sad, and crying when the women met in person in December 2017. Maria wanted Billar to end the affair, and Billar told Maria it was already over. After that meeting, Billar evicted Roman and his family from the rental home.

- **Roman and Maria's eldest daughter, Lindsay**

Lindsay told the jury that a month before Maria died, she heard her parents arguing outside. When Maria came back inside the house, she was screaming, crying, and holding her stomach. Maria told Lindsay that Roman had punched her. Lindsay wanted to keep her mom safe and away from Roman, so they went into Lindsay's room and locked the door. Initially, Maria told Lindsay to call the police, but after she calmed down, she told Lindsay not to call the police because she was afraid for her to call. Lindsay also told the jury that she had a concern for her mom's safety around Roman.

- **Roman and Maria's daughter-in-law, Nicole Brown**

Brown testified about two similar incidents of violence that occurred before Maria's death. Brown is married to Roman and Maria's son, Freddie. At the time of

Maria's death, Brown, Freddie, and their child lived with Roman and Maria. According to Brown, about a month before Maria died, Maria and Roman went to the store to buy beer. Brown and Maria shared their locations with each other through their phones and, on that day, Brown noticed that Maria's phone had been sitting at one location on a nearby road for "a really long time." When Maria returned home, she was "really scared" and told Brown that Roman "was choking her and she was scared that she was going to die." Maria did not want Brown to call the police.

Then, on June 16, 2018, Brown received a phone call from Maria. Brown and Freddie were on vacation in Broken Bow, Oklahoma, when she received the call. Maria told Brown that she was scared, that Roman "was scaring her, that he was going to hurt her," and she asked if Brown and Freddie could come home because "she was really scared."

- **Roman and Maria's son, Freddie**

According to Freddie, about a month before Maria died, Roman asked him if police officers could track a bullet to a specific gun. Roman asked how bullets could be tracked, and how a bullet would be identified. Freddie did not have an answer to his father's questions, so he just gave Roman his own opinion of what he thought the answers were.

Each time the State proceeded to offer a portion of the testimony described above, Roman objected on Rule 404(b) and article 38.36 grounds and requested a limiting instruction. He also objected based on Rule 403 to all of the testimony listed

above except for Freddie's testimony regarding Roman's questions about bullet tracking. The trial court overruled each objection and each time admonished the jury as follows:

> Ladies and gentlemen, the State has introduced, or may introduce, into evidence some acts or acts other than the ones charged in the indictment. With reference to those other acts you are instructed that that evidence is admitted only for the purpose of showing, if it does, the motive, intent, absence of mistake, or previous relationship between the accused and the deceased, along with all relevant facts and circumstances to show the condition of the mind of the defendant at the time of the offense. You cannot consider said testimony for any purpose unless you find beyond a reasonable doubt that the defendant committed such other act, or acts, if any were committed. If you so find beyond a reasonable doubt, you can consider the evidence only for the purpose allowed. The evidence may not be considered to prove the character of the defendant in order to show that he acted in conformity therewith on the occasion in question.

The jury charge also included a limiting instruction consistent with the instruction the trial judge orally provided during trial:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. With reference to those other acts, you are instructed that the evidence was admitted only for the purpose of showing, if it does, the motive, intent, absence of mistake or previous relationship between the accused and the deceased, along with all relevant facts and circumstances to show the condition of the mind of the defendant at the time of the offense. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed such other act or acts, if any were committed. If you so find beyond a reasonable doubt, you can consider the evidence only for the purpose allowed. The evidence may not be considered to prove the character of the Defendant in order to show that he acted in conformity therewith on the occasion in question.

The jury found Roman guilty of murder as charged in the indictment and did not answer the jury questions regarding manslaughter, criminally negligent homicide,

and aggravated assault family violence. Per Roman's election, the trial judge determined punishment. No additional evidence was presented during the punishment phase. The trial court sentenced Roman to ninety-nine years' confinement. Roman filed a motion for new trial, which was denied by written order without a hearing. This appeal followed.

## STANDARD OF REVIEW

"We review the trial court's admission of extraneous offense evidence under an abuse of discretion standard." *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). If the trial court's ruling falls within the "zone of reasonable disagreement," there is no abuse of discretion and we will uphold the ruling. *Robledo v. State*, No. 05-17-00064-CR, 2018 WL 1391377, at *2 (Tex. App.—Dallas Mar. 20, 2018, no pet.) (mem. op., not designated for publication) (citing *Id.*). "If the trial court's evidentiary ruling is correct under any applicable theory of law, an appellate court should not disturb it, even if the trial court gave a wrong or insufficient reason for the ruling." *Delacerda v. State*, AP-77,078, 2021 WL 2674501, at *12 (Tex. Crim. App. June 30, 2021) (citing *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016)). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Delacerda*, 2021 WL 2674501, at *12 (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)).

–6–

# APPLICABLE LAW

In two issues, Roman contends the trial court abused its discretion by admitting evidence of extraneous offenses or wrongful acts under rule 404(b) of the Texas Rules of Evidence and article 38.36 of the Texas Code of Criminal Procedure. Article 38.36 of the code of criminal procedure provides:

> (a) In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. art. 38.36(a). In some situations, prior acts of violence between the victim and accused may be offered to illustrate the nature of the relationship. *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). "These specific acts of violence must meet the requirements of the Rules of Evidence in order to be admissible." *Id.*; *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999) (evidence admitted under article 38.36 is still subject to rules 403 and 404(b) of the Texas Rules of Evidence).

The State may not introduce evidence of a defendant's prior crimes, wrongs, or other acts for the sole purpose of showing his character and that he acted in conformity with that character on a particular occasion. TEX. R. EVID. 404(b); *Smith*, 5 S.W.3d at 678. The evidence may be admissible, however, if it is offered for a purpose other than character conformity. *Smith*, 5 S.W.3d at 678. Permissible purposes listed in rule 404(b) include motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b); *Smith*, 5 S.W.3d at 678. But "this list is not exhaustive." *Garcia*, 201 S.W.3d at 703.

"[A]lthough rules [of evidence] 403 and 404 limit the admissibility of some article 38.36(a) relationship evidence, this does not mean that the statute and the rules are in conflict with each other." *Garcia*, 201 S.W.3d at 703. It means that the State is prohibited from presenting evidence if the probative value is substantially outweighed by unfair prejudice, or "for the sole purpose of showing that the accused acted in conformity with his bad character and murdered the victim." *Id.* "While Rule 404(b) limits the admissibility of specific acts used to show only the defendant's character, and may keep a prosecutor from trying the case not on the charged offense but on the past acts of the accused, it certainly does not block the admission of all relationship evidence." *Id.* "For example, in cases in which the prior relationship between the victim and the accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible." *Id.* "What issues are material will depend on the theories of the prosecution and the defense." *Smith*, 5 S.W.3d at 679 n. 13 (citing *Fielder v. State*, 756 S.W.2d 309, 318 (Tex. Crim. App. 1988)); *Bailey v. State*, No. 05-13-01536-CR, 2015 WL 1649946, at *9–10 (Tex. App.—Dallas Apr. 13, 2015, no pet.) (mem. op., not designated for publication).

"[I]f a defendant makes timely 404(b) or 403 objections, before a trial court can properly admit the evidence under Article 38.36(a), it must first find the non-

character conformity purpose for which it is proffered is relevant to a material issue." *Smith*, 5 S.W.3d at 679. "If relevant to a material issue, the trial court must then determine whether the evidence should nevertheless be excluded because its probative value is substantially outweighed by the factors in Rule 403." *Id.* In other words, even when evidence is admissible under rule 404(b), it may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403 ("although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."); *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012); *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999); *Harris v. State*, 572 S.W.3d 325, 334 (Tex. App.—Austin 2019, no pet.). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018).

Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 does not exclude all prejudicial evidence; it focuses instead on the danger of unfair prejudice. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence is unfairly

prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground other than proof specific to the offense charged. *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). A trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). When undertaking a rule 403 analysis, a trial court balances:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez*, 544 S.W.3d at 372 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). As the court noted in *Gigliobianco*, however, "these factors may well blend together in practice." *Gigliobianco*, 210 S.W.3d at 642;

## ANALYSIS

In his brief, Roman acknowledges article 38.36 and recognizes that the trial court is given "substantial discretion" when balancing the evidence's probative value with the risk of unfair prejudice. Roman nonetheless contends that the State "should have been allowed to offer only evidence concerning the specific alleged murder and aggravated assault charges in said Amended Indictment." We disagree and conclude it was well within the zone of reasonable disagreement for the trial court to have

found that the disputed evidence was admissible for a non-character-conformity purpose.

With respect to the applicability of article 38.36(a), we conclude the challenged testimony of MDJ, Lindsay, and Brown illustrates the nature of the relationship between Maria and Roman. Thus, the requirements of article 38.36(a) have been met as to that testimony. *See* TEX. CODE CRIM. PROC. art. 38.36(a); *see also Garcia*, 201 S.W.3d at 703–04. The testimony was not offered for the sole purpose of showing Roman had a violent character and acted in conformity with that character in murdering Maria. Rather, the relationship between Roman and Maria was itself a material issue. The circumstances surrounding the relationship of Roman and Maria at the time of Maria's death is relevant evidence under article 38.36(a), and the testimony of MDJ, Lindsay, and Brown regarding the arguments between Roman and Maria, the physicality associated with their arguments, and Maria's fear of Roman as a result is admissible under rule of evidence 404(b) for the purpose of illustrating the nature of their relationship. *See Garcia*, 201 S.W.3d at 704; *see also Smith*, 5 S.W.3d at 679; *Bailey*, 2015 WL 1649946, at *9–10. As for Freddie's testimony that, a month before the murder, Roman was contemplating whether and how law enforcement can track or trace a bullet to a certain gun is probative of intent and of the condition of Roman's mind at the time of the offense. Similarly, Billar's testimony regarding the affair, her discussion with Maria about the affair, Maria's request that Billar end the affair, and Billar's decision to evict the Roman family

following that discussion was probative to show not only the relationship between Roman and Maria prior to her death, but also to illustrate a motive and the condition of Roman's mind at the time of the offense.

Moreover, Roman made intent an issue by presenting the theory that an unknown third party killed Maria. Evidence of previous injuries Maria suffered at the hands of Roman was, thus, material to that issue and admissible to rebut the defense theory. *See Garcia*, 201 S.W.3d at 704; *see also Robbins*, 88 S.W.3d 256, 262 (Tex. Crim. App. 2002) (holding evidence of previous injuries to victim while in appellant's care material to issue of intent where appellant presented the theory that the injuries to the victim at the time of her death were caused by efforts to resuscitate her).

With respect to rule 403, we cannot conclude the probative value of any of the challenged testimony was substantially outweighed by the danger of unfair prejudice. The nature of Roman's relationship with Maria in the weeks and months leading up to the murder was inherently probative of the circumstances surrounding her death, and the disputed evidence was needed to demonstrate that relationship. *See Garcia*, 201 S.W.3d at 704. There is no reason for us to believe that the disputed evidence confused or distracted the jury from the main issues, suggested the jury make its decision on an improper basis, or was given undue weight by the jury. *See Gigliobianco*, 210 S.W.3d at 641. The disputed evidence involved incidents substantially less serious than the murder at issue, and the presentation of the

disputed evidence did not consume an inordinate amount of time or merely repeat evidence already admitted. See *id.* Accordingly, we conclude the evidence at issue met the admissibility requirements of rule 403. TEX. R. EVID. 403; *see also Sanders v. State*, No. 05-09-01337-CR, 2011 WL 1843508, at *12 (Tex. App.—Dallas May 16, 2011, pet. ref'd) (mem. op., not designated for publication).

## CONCLUSION

We overrule Roman's two issues. Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200011f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

SEBASTIAN CARLOS ROMAN,
Appellant

No. 05-20-00011-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 397th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 071029 Ct 1.
Opinion delivered by Justice Partida-
Kipness. Justices Pedersen, III and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 23rd day of July, 2021.